# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MC WINSTON,

        Petitioner,

    v.                                   Case No. 07-C-0777

TIMOTHY LUNDQUIST,

        Respondent.

## DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS

### I. PROCEDURAL BACKGROUND

On August 29, 2007, the petitioner, MC Winston ("Winston"), filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his confinement at New Lisbon Correctional Institution, New Lisbon, Wisconsin. Respondent Warden Timothy Lundquist admits that Winston's petition was timely filed under 28 U.S.C. § 2244(d)(1)(A). (Resp't Ans. ¶ 7.) Both parties consented to the exercise of full jurisdiction by a magistrate judge, including entry of final judgment. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

On December 30, 2008, United States District Judge Charles N. Clevert reviewed the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases and dismissed two of Winston's claims, including his jury instruction and DNA testing claims. Judge Clevert allowed Winston to proceed on his three remaining claims, including his Fourth Amendment, ineffective assistance of counsel, and sufficiency of the evidence claims.[1]

---

[1] It is unclear from the initial Rule 4 review whether Winston was permitted to proceed on his final claim, which is that the amended information violated his right against double jeopardy and amending the information amounted to prosecutorial vindictiveness. However, giving Winston the benefit of every doubt, the court will assume that this claim survived Rule 4 review.

The State initially charged Winston with one count of second-degree sexual assault of a child, based upon sexual intercourse. *State v. Winston*, No. 03-3412-CR, 2004 WL 1982229, at ¶ 2 (Wis. Ct. App. Sept. 8, 2004) (unpublished). In March 2002, the case was tried to a jury on an amended charge of second-degree sexual assault on the basis of sexual contact; the jury was unable to reach a verdict, and the trial court subsequently ordered a mistrial. *Id.* at ¶ 4. Thereafter, the information was amended to charge Winston with two counts of second-degree sexual assault, one for sexual contact and one for sexual intercourse. *Id.* In September 2002, a jury found Winston guilty of one count of second-degree sexual assault of a child based upon sexual contact and not guilty of second-degree sexual assault of a child based on sexual intercourse. *Id.* at ¶ 13. In November 2002, Winston was sentenced to thirty years imprisonment, comprised of twenty years of confinement and ten years of extended supervision. *Id.*

In September 2003, Winston filed a postconviction motion alleging the following:

(1) the State violated due process and Wis. Stat. § 971.23(1)(h) (discovery and inspection; exculpatory evidence) when it failed to turn over Property Inventory 180783; (2) Inventory 180783 was newly-discovered evidence; (3) his lawyer at the second trial gave him ineffective assistance when the lawyer did not request a copy of Inventory 180783; (4) he was entitled to a new trial in the interest of justice because the real controversy was not tried due to the absence of Inventory 180783; and (5) his lawyer at the second trial rendered ineffective assistance when the lawyer failed to request a copy of the transcripts from the first trial to use for impeachment purposes.

*Id.* at ¶ 14. The trial court denied Winston's motion without a hearing. *Id.*

In a per curiam decision dated September 8, 2004, the Wisconsin Court of Appeals affirmed Winston's conviction. *Id.* On January 11, 2005, the Wisconsin Supreme Court denied Winston's petition for review, pursuant to Wis. Stat. § 808.10. (Ex. G.) Winston did not file a petition for certiorari to the United States Supreme Court.

In April 2005, Winston, proceeding pro se, filed a second postconviction motion pursuant to Wis. Stat. § 974.06 seeking an order vacating his judgment of conviction, a new trial, and new DNA testing. (Ex. H.) In his motion, Winston alleged the following:

> [H]is appellate counsel was ineffective for failing to allege that his first trial lawyer failed to file a pretrial motion to obtain a copy of the arrest warrant and failed to call Daniel Robinson as a witness for the defense. He further allege[d] that his appellate counsel was ineffective for failing to allege that his second trial lawyer failed to order transcripts pertaining to any pretrial motions filed by the District Attorney's Office prior to April 25, 2002 and failed to call Robinson. Finally, the defendant allege[d] that appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct, purposeful discrimination during jury selection, and insufficiency of evidence.

(Ex. I at 118.) The trial court denied his motion, and the Wisconsin Court of Appeals subsequently affirmed. *State v. Winston*, No. 2005AP1255, 2007 WL 586394, at ¶ 1 (Wis. Ct. App. Feb. 27, 2007) (unpublished). In March 2007, Winston petitioned the Wisconsin Supreme Court for review, and the Wisconsin Supreme Court denied his petition on July 17, 2007. (Exs. L, M.)

Winston's habeas petition raises claims that invoke the protections of the Fourth, Fifth, and Sixth Amendments as well as a claim regarding the sufficiency of evidence. More precisely, Winston contends that he is entitled to a writ of habeas corpus because (1) the State violated his rights when executing a search with an "unlawful parole agent revocation warrant" in the name of Winston's son; (2) counsel was ineffective in failing to order transcripts from the first trial, call Daniel Robinson as a witness for impeachment purposes, and ensure that there were men on the jury; (3) the evidence was insufficient to support a guilty verdict; and (4) the amended information was both duplicitous and multiplicitous, and amending the information amounted to prosecutorial vindictiveness. (Pet. Br. 1-6.)

The claims presented in Winston's petition have now been fully briefed by the parties and are

3

ready for resolution. For the reasons discussed below, Winston's petition for a writ of habeas corpus

will be denied and this action will be dismissed.

## II. FACTUAL BACKGROUND

The following is a summary of the facts underlying Winston's conviction, as set forth by the

Wisconsin Court of Appeals:

>        At the second trial, Candida, then sixteen, testified that instead of going to
> school on October 5, 2001, she went to the Kandy Konnektion, a candy store, on
> National Avenue in the City of Milwaukee, to buy cigarettes. Candida told the jury
> that, when she got to the store, she saw Winston, a store employee whom she knew,
> and told him that she would "kick it" with him for the day. According to Candida,
> she and Winston left the store around lunchtime to get Chinese food. While they
> were out, Winston also bought gin, lemonade, and beer at a nearby store.
>        Candida testified that, after they returned to the candy store, Winston and
> another employee ate the Chinese food, while she drank some of the gin and
> lemonade that Winston had poured into a soda bottle. Candida claimed that Winston
> then let her into a storage room and she and Winston sat down on a mattress, where
> she continued to drink the gin and lemonade. She told the jury that, at that point, she
> was starting to "feel" the alcohol.

*Winston*, 2004 WL 1982229, at ¶¶ 5-6.

For present purposes, this court need not recount all of the details that follow. It is enough

to say that Candida testified that Winston sucked on at least one of her breasts, and that she and

Winston engaged in both oral and vaginal intercourse. According to Candida, she told Winston to

stop, and he did. She then left the store. *Id.* at ¶¶ 7-8.

## III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in

[State] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). Title 28 U.S.C. § 2254 states, in

pertinent part, that:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that

4

(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless the state court's judgment:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

A state court decision results in an "unreasonable application" of clearly established federal law when that court either: (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

5

should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

However, the restricted scope of review prescribed by AEDPA does not apply to any federal constitutional claims that, although presented to the state court, were not adjudicated on the merits by the state court. Thus, if there is some question as to whether the claim was in fact decided on the merits by the state court, the reviewing habeas court must first determine whether the claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). If the state court did not adjudicate the merits of the claim, the provisions of § 2254 do not apply and the federal habeas court applies the general habeas standard set forth at 28 U.S.C. § 2243, which requires a district court to "dispose of the matter as law and justice require." *See Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000) (quoting 28 U.S.C. § 2243). All that having been said, deciding whether a claim has been adjudicated on the merits by the state court involves first determining what it means to be "adjudicated on the merits" for purposes of § 2254(d).

AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not "an entitlement to a well-articulated or even a correct decision by a state court." *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005). In fact, several circuits, including the Seventh Circuit, have held that even if a state court does not offer *any* reason for its decision and summarily disposes

6

of a petitioner's claim, that summary disposition would be an adjudication on the merits. *See id.* (citing decisions by eight other circuits). "An adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Id*. at 815 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) ("'Adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.")). "It is only after a federal court has determined that a state court has adjudicated a claim on the merits that the correctness of the state court's decision is considered. Only then can a federal court consider a court's reasoning . . . ." *Muth*, 412 F.3d at 815-16 (footnote omitted).

## IV. DISCUSSION

This court reads Winston's petition to assert the following four bases upon which he seeks to obtain federal habeas corpus relief: (1) the State violated his rights by executing a search with an "unlawful parole agent revocation warrant" in the name of his son; (2) counsel was ineffective in failing to order transcripts from the first trial to highlight inconsistencies in testimony, call Daniel Robinson as a witness for impeachment purposes, and ensure that there were men on the jury; (3) the evidence was insufficient to support a guilty verdict; and (4) the amended information was both duplicitous and multiplicitous, and amending the information amounted to prosecutorial vindictiveness. (Pet. Br. 1-6.) The court will address each of Winston's claims in turn.

### A. *Arrest Warrant*

Winston's Fourth Amendment claim is that "the State violated [his] rights when police search[ed] [him] with an unlawful parole agent revocation warrant in the name of [his] son Michael Winston [and] then used it to arrest [him]." (Pet. Br. 1.) Because there was an unlawful arrest warrant, Winston contends that the evidence, namely the results of a blood test, must be suppressed

as fruit of the poisonous tree.  Before reaching the merits of his claim, the court must first determine whether Winston's Fourth Amendment claim falls within the substantive scope of the habeas corpus writ.

The United States Supreme Court in *Stone v. Powell*, 428 U.S. 465 (1976), held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494.  The Court's reasoning stemmed from the primary justification of the exclusionary rule, which is "the deterrence of police conduct that violates Fourth Amendment rights."  *Id.* at 486.  In "weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims," *id.* at 489, the court determined that the added deterrent effect from law enforcement authorities "fear[ing] that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal" was minimal and "would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice," *id.* at 493-94.

What the *Stone* Court meant by "full and fair" has "caused considerable consternation." *Cabrera v. Hinsley*, 324 F.3d 527, 530-31 (7th Cir. 2003).  However, the Seventh Circuit has stated:

> A [petitioner] receives an opportunity for full and fair litigation of a Fourth Amendment claim when (1) the [petitioner] has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his Fourth Amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts.

*Terry v. Martin*, 120 F.3d 661, 663 (7th Cir.1997); *see also Weber v. Murphy*, 15 F.3d 691, 694 (7th Cir. 1994) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)).

Winston argues that "he was without a meaningful inquiry because the Wisconsin [C]ourt of [A]ppeals did not thoroughly address the validity of an arrest warrant that identified Winston's son

8

as the target, rather than Winston." (Pet.'s Reply 1.) The Wisconsin Court of Appeals addressed Winston's suppression claim as follows:

> The arrest warrant in the record bears Winston's name; he claims that the warrant used to arrest him was a warrant different from the warrant in the record.
>
> We cannot consider an alleged warrant that is not in the record; we are obliged to rely on the arrest warrant in the record. *See Howard v. Duersten*, 81 Wis. 2d 301, 307, 260 N.W.2d 274 (1977). Consequently, Winston has not established that he was arrested on a defective warrant.

*State v. Winston*, No. 2005AP1255, 2007 WL 586394, at ¶¶ 9-10 (Wis. Ct. App. Feb. 27, 2007) (unpublished). In a footnote, the court further stated: "Notwithstanding Winston's inability to obtain the warrant he claims was actually used to arrest him, the appellate record contains a valid arrest warrant. We cannot rely on Winston's uncorroborated allegations that he was arrested pursuant to his son's parole warrant, when a valid arrest warrant for Winston is in the appellate record." *Id.* at ¶ 10 n.2.

In rejecting Winston's suppression claim, the court of appeals did not reach the question of whether postconviction counsel was ineffective for failing to challenge trial counsel's ineffectiveness for failing to move to suppress evidence obtained with an allegedly defective warrant. The logical first step in determining said ineffectiveness claim would be to examine the alleged defective warrant. However, under *Howard*, the appeals courts was precluded from considering the alleged defective warrant because it was not part of the trial court record. *See* 81 Wis. 2d at 307 & n.4, 206 N.W. 2d at 277 & n.4 (holding that an appellate court cannot consider an affidavit that was not part of the trial court record). Because the court could not consider the warrant, Winston's corresponding ineffectiveness claim was implicitly rejected. Therefore, the Wisconsin Court of Appeals did not reach the merits of Winston's claim.

Thus, it is doubtful that Winston's Fourth Amendment claim has been fully litigated under

the standard set forth in *Stone* and that the facts surrounding the Fourth Amendment claim have been carefully and thoroughly analyzed under the proper constitutional case law, as required by *Terry*. Although Winston did not present the alleged defective warrant to the court of appeals, the result would have been the very same as if he had presented it, thereby supporting the conclusion that his claim was not thoroughly considered.

However, "[i]f the state court declined to reach the merits of the petitioner's claim because of a procedural default," federal habeas relief is barred. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). The "default must constitute an independent and adequate state-law ground in order to be a bar to federal habeas relief." *Id.* Whether the ground is independent depends on state law and whether it is adequate depends on federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997) (citing *Hogan v. McBride*, 74 F.3d 144 (7th Cir. 1996)).

As discussed above, Wisconsin has a procedural rule whereby appellate courts will not allow supplementation of the appellate record with materials that were not a part of the trial court record. *See Howard*, 81 Wis. 2d at 307, 260 N.W.2d at 277. Because the court of appeals relied on said procedural rule in determining that Winston was not arrested on a defective warrant, the court must, therefore, examine whether the procedural rule is independent and adequate.

A procedural default constitutes an independent state law ground if "the last state court to consider the question actually relied on procedural default as the basis for its decision." *Braun*, 227 F.3d at 912 (citing *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990)). The state court must have "'clearly and expressly' relied on procedural default as the basis of its ruling." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). Here, the last state court to consider Winston's Fourth Amendment claim, the Wisconsin Court of Appeals, clearly and expressly relied on the rule that it cannot consider documents not part of the record. *State*

*v. Winston*, No. 2005AP1255, 2007 WL 586394, at ¶ 10 (Wis. Ct. App. Feb. 27, 2007) (unpublished) (citing *Howard*, 81 Wis. 2d at 307, 260 N.W.2d 274). Thus, the court declined to address Winston's federal claim because he failed to meet a state procedural requirement, thereby satisfying the independent state law requirement.

"To be an adequate ground of decision, the state's procedural rule must be both 'firmly established and regularly followed.'" *Braun*, 227 F.3d at 912 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). It must be applied in a "'consistent and principled way'; it cannot be employed 'infrequently, unexpectedly, or freakishly.'" *Id.* (quoting *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000); *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992)). Stated another way, "[w]hether a procedural rule is adequate is really a question of whether the state court had the authority to apply it and, if so, whether the court applied it consistently." *Hendrix v. McCaughtry*, 14 F. Supp. 2d 1085, 1088 (E.D. Wis. 1998). Wisconsin's rule regarding what can be reviewed on appeal is firmly established, having been applied long before Winston failed to incorporate within the trial court record the alleged defective warrant. *See, e.g.*, *Newcomb v. Town of Trempealeau*, 24 Wis. 459, 460-61 (1869) ("We must be governed by the record brought up in pursuance of the appeal taken to this court."). Moreover, there is no evidence that the Wisconsin courts have applied this rule inconsistently; quite to the contrary, it appears as though the rule is regularly followed. *See Howard*, 81 Wis. 2d at 307 n.4, 260 N.W. 2d at 277 n.4 (1977) (citing eight Wisconsin Supreme Court decisions adhering to said procedural rule). Thus, the procedural rule relied upon by the court of appeals is adequate.

Being that the court of appeals' decision rested on an independent and adequate state law ground, a federal court may only hear Winston's claim if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In his petition, Winston failed to demonstrate any cause for having procedurally defaulted his Fourth Amendment claim. It is not until his reply brief that he asserts the cause for the default was the ineffectiveness of his trial and postconviction counsel for not having raised the defective warrant claim. Because Winston first raised his ineffectiveness argument with respect to the alleged defective warrant in his reply, he has waived his ineffectiveness argument with respect to the same by not raising it in his initial brief. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997); *see also United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court.").[2]

Additionally, Winston cannot overcome the procedural default of his claim on the basis of a fundamental miscarriage of justice. There is a fundamental miscarriage of justice "when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), *superseded by statute*, AEDPA, Pub. L. No. 104-132, 100 Stat. 1214, *as recognized in Hazel v. United States*, 303 F. Supp. 2d 753 (E.D. Va. 2004). To satisfy this standard, the petitioner must show that he is "actually innocent." *See Schlup v. Delo*, 513 U.S. 298, 314-16, 326-27 (1995). Because Winston has not claimed, nor presented any evidence, that he was "actually innocent," he has not proved that there would be a miscarriage of justice if this court did

---

[2] Although petitioners can invoke federal habeas review to attack Fourth Amendment errors when they claim that the failure to assert Fourth Amendment rights constituted ineffective assistance of counsel, *see Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986), this court will not depart from the general prohibition against entertaining argument not raised in the initial brief. Even if Winston raised this argument in his initial brief, he still must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375; *see also Thomas v. O'Leary*, 856 F.2d 1011, 1016 (7th Cir. 1988). Winston has made no such showing here.

12

not reach the merits of his Fourth Amendment claim. *See Moleterno v. Nelson*, 114 F.3d 629, 636 (7th Cir. 1997) (holding that because the petitioner made no argument that he was actually innocent of the crimes committed, the exception did not apply).

Because Winston defaulted his Fourth Amendment claim in state court pursuant to an independent and adequate state procedural rule, his petition will be denied as to this claim.

## B. Ineffective Assistance of Counsel

Next, Winston challenges the effectiveness of his trial counsel. The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An ineffective assistance of counsel claim is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* is clearly established federal law, as determined by the Supreme Court of the United States. *See Washington v. Smith*, 219 F.3d 620, 627-28 (7th Cir. 2000). Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687.

The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. In other words, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Id*. at 689. In addition, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Under the second component, a petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. This requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

If the court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Winston asserts that his trial counsel was ineffective because he: (1) failed to order transcripts from the first trial to highlight inconsistencies in testimony and to highlight the perjury committed by three witnesses; (2) failed to call Daniel Robinson as a witness to impeach the testimony of the victim and another witness; and (3) failed to ensure that there were men on the jury.

In deciding Winston's ineffective assistance claims, the Wisconsin Court of Appeals applied the two-pronged test of *Strickland*. That is to say, the court of appeals identified the correct governing legal rule from the Supreme Court. Thus, the only question for this court to decide is whether the state court unreasonably applied *Strickland* to the facts of Winston's case. Because Winston has failed to demonstrate either that counsel's performance was deficient or that he was prejudiced by counsel's performance, his petition will also be denied as to these claims.

**1. Failure to Order Trial Transcripts**

Winston asserts that trial counsel's and postconviction counsel's failure to order transcripts

of the first jury trial so that "he could have shown the perjury testimony by [three] state witness[es]" was an error so serious that it rendered his counsel constitutionally ineffective. (Pet. Br. 1.)

In addressing this claim, the court of appeals held that Winston did not show the prejudice necessary to maintain an ineffective assistance claim in this regard. Specifically, the court of appeals stated:

> The alleged inconsistencies and discrepancies [in certain witnesses' testimony] deal with the DNA evidence found on the victim, and the various legally insignificant facts about which various witnesses testified. The alleged discrepancies regarding the collection of DNA evidence (such as what part of the victim's breast was swabbed) become legally insignificant because the victim testified that Winston had sucked on (at least) one of her breasts and Winston would not deny that it was his DNA on her face, hair and the front part of her shirt. Although he claims that he could have accidentally spit on the victim while laughing at a joke, the jury found otherwise. Likewise, who the witnesses walked to school with, or how much money the victim had been given that day . . . are not sufficiently significant to claim that it was reasonably probable that (further) impeachment by trial counsel would have resulted in Winston's acquittal on the sexual contact charge. Counsel is not ineffective for failing to impeach a witness on the basis of minor inconsistencies that would not have affected the verdict.

*State v. Winston*, No. 2005AP1255, 2007 WL 586394, at ¶ 17 (Wis. Ct. App. Feb. 27, 2007) (unpublished) (citing *State v. DeLeon*, 127 Wis. 2d 74, 85, 377 N.W.2d 635 (Ct. App. 1985)).

I find that the court of appeals reasonably concluded that Winston has not met the *Strickland* standard with respect to this issue. Winston has not demonstrated that but for counsel's failure to order trial transcripts, the result of the proceeding would have been different. Nor has Winston demonstrated that the state court's determination of fact was unreasonable. To the contrary, the court of appeals examined the alleged inconsistencies and reasonably found that they were not sufficiently significant to change the result of the proceeding, in light of the consistency of testimony that evidenced Winston's guilt. Moreover, in his habeas petition, Winston does not *fully* allege what he believes to be the false testimony, nor does he adequately set forth the discrepancies in testimony between the first and second trial. Accordingly, Winston has failed to establish that the state court's

decision was contrary to, or involved an unreasonable application of, clearly established federal law or that the state court's ruling amounted to an unreasonable determination of fact. Therefore, Winston is not entitled to habeas relief based on the claim that counsel was ineffective for failing to order trial transcripts.

### 2. Failure to Call Daniel Robinson as a Witness

Winston alleges that the failure to call Daniel Robinson as a witness constituted deficient performance and was also prejudicial because Daniel Robinson's testimony would have discredited the victim and her friend by demonstrating that they committed perjury. According to Winston, if Robinson would have been called to testify, he would have testified as follows:

> [H]e *was with Candida, Katie and Christina on Oct 5, 2001 when Candida came to his car in the back of Kelly house, showing two large bags of cocaine and a package of pills; she said that she and Marie had taken from the bathroom of the store. And those drugs belong to Steve the owner of the store that they found the drugs looking for a towel to wash Candy face. Candy called to the store and asked Maria about the pills she was told that those pills were Mc diabetic pills, he's outside walking around looking for her. That they stayed in doors until Maria was called back and told them Mc just came into the store and got her bus pass to go home for more pills he's not feeling good. That he don't know about the drugs they took. He would also provide testimony that Katie mother smokes cocaine and came up with the idea[] to say Mc had sex with Candy if things got out of hands when Steve find out his drugs are Gone. He would think that Mc took those drugs because they have argued before about Steve leaving drugs in the store. He would also provide testimony that Katie didn't go to school that day. She was riding around with him all that morning. He would give testimony that everything about the sex was all made up. That one week after the police came to the Kelly house, Christina jumped Candy and Katie for not giving her a share of the money* [from] *the sale of the drugs) [sic]*.

(Reply Br. 4.) Although Winston details what the missing evidence or testimony would have been, he does not indicate why counsel did not call Robinson as a witness. Additionally, the record is absent as to why counsel did not call Robinson.

With respect to Winston's ineffectiveness claim for failing to call Robinson as a witness, the

Case 2:07-cv-00777-WEC   Filed 11/19/09   Page 16 of 29   Document 18

court of appeals held that Winston did not demonstrate how Robinson's testimony was necessary to render his acquittal reasonably probable. The court stated:

> First, Winston merely alleges what he claims would have been Robinson's testimony. These conclusory allegations are insufficient to meet the requisites for an evidentiary hearing. . . . Robinson's prospective testimony is inadequately proffered.
>
> Second, much of Robinson's alleged prospective testimony could have been established by other witnesses, principally Winston himself when he testified in his defense. Consequently, Winston has not established the necessity of Robinson's testimony.

*Winston*, 2007 WL 586394, at ¶¶ 15-16 (citations omitted). Simply put, the court of appeals' application of *Strickland* to the facts presented in this action was not unreasonable.

In my opinion, Winston has not demonstrated that he was prejudiced by his counsel's failure to call Robinson as a witness. Even assuming that Robinson had been called and had testified in the fashion set forth above, it cannot be said that "there is a reasonable probability that [if the jury had heard such testimony] the result of the proceeding would have been different." *See Strickland v. Washington,* 466 U.S. 668, 694 (1984). The jury heard testimony about Winston's and the victim's involvement with drugs, and to the extent that Robinson would have testified that "everything about the sex was all made up," it would not have altered the result of the proceeding because Winston was acquitted of the sexual intercourse charge. Robinson, according to Winston himself, would not have provided any specific testimony regarding the petitioner's innocence with respect to the sexual contact charge—the charge he was convicted of committing.

To be sure, "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)). The *Best* court went on to indicate that the "outright failure to investigate witnesses . . . is more likely to be a sign of deficient

performance." *Id.* (citing *Rompilla v. Beard*, 545 U.S. 374, 387 n.7 (2005)). However, Winston is not claiming that his counsel failed to investigate. Thus, absent a showing that Winston's counsel failed to investigate and interview Robinson as a witness, there is a strong presumption that counsel's conduct falls within the realm of reasonable professional assistance.

That Winston now, in hindsight, believes that the failure to call Robinson as a witness was so prejudicial as to constitute ineffective assistance is not enough to pass the *Strickland* test. Because I find that Winston's counsel's failure to call Robinson as a witness was not prejudicial to his defense, I need not decide whether counsel's performance was deficient in this respect. Thus, Winston is not entitled to habeas relief as to this claim.

### 3. Jury Make-Up

Winston's final ineffective assistance claim is that his counsel was ineffective in exercising peremptory challenges to exclude male jurors on the basis of gender. (Pet. Br. 3-6.) The court of appeals rejected such contention, stating:

> First, this same all female jury acquitted Winston of the sexual assault involving intercourse and convicted him only of the sexual assault involving contact. This result blunts Winston's contention. Second, appellate counsel declined to raise this claim on direct appeal because trial counsel's strategic reason for favoring female jurors was his belief that they would be more critical of the victim than male jurors would be. That defense strategy was reasonable, and thus, "virtually unchallengeable."

*Winston*, 2007 WL 586394, at ¶ 13 (citing *Strickland*, 466 U.S. at 690-91).

Winston's challenge is predicated on *Batson v. Kentucky*, 476 U.S. 79 (1986), which held that the Equal Protection Clause prohibits intentional discrimination against potential jurors on the basis of race. *Id.* at 89. Approximately eight years later, *Batson* was extended in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), to prohibit intentional discrimination on the basis of gender in the selection of jurors. *Id.* at 144-45. Since *Batson*, the Supreme Court has held that the prosecution

may assert a *Batson* challenge to the discriminatory use of peremptory challenges by the defense. *Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

Winston claims in his habeas petition that his counsel "*struck six men and one woman . . . [because trial counsel] believed that an all woman jury would be more critical of* [the victim] *th[a]n men would be . . . because she is a girl.*" (Pet. Br. 4.) The respondent, in his brief to the court of appeals, stated that Winston's counsel struck two women and three men, relying on a letter from postconviction counsel that was attached to Winston's motion, as well as the trial transcript. (Ex. I at 18; Ex. N at 6:2-3.)

Although *Batson* requires that a party make out a prima facie case of purposeful discrimination, *see* 476 U.S. at 93-94, and although this case presents an unusual application of *Batson*, no objections were made regarding counsel's use of peremptory strikes either immediately following jury selection or after Winston was found guilty on one of the two charged counts.[3] Therefore, there is no evidence in the record that indicates that his trial counsel discriminated against any jurors on the basis of their gender in selecting the venire. The court simply cannot find a constitutional violation of the Equal Protection Clause on Winston's bare allegations.

Nevertheless, had a *Batson* hearing been held and had it been discovered that Winston's counsel exercised peremptory challenges on the basis of gender stereotypes, Winston's claim still must be rejected for the two reasons set forth below.

First, there is no clearly established federal law that defendant's criminal conviction cannot

---

[3] *Batson* also requires that the party alleging purposeful discrimination make a "timely" objection. *See* 476 U.S. at 99-100. In Wisconsin, an "objection is timely if it is made after the composition of the jury is made known, but before the jury is sworn." *State v. Jones*, 218 Wis. 2d 599, 602, 581 N.W.2d 561, 563 (Ct. App. 1998). However, the court of appeals in the present action did not dismiss Winston's *Batson* claim on grounds of untimeliness; rather, it proceeded to the merits of his ineffective assistance of counsel claim, and thus, so will this court.

19

stand if defense counsel violated *Batson* because the United States Supreme Court has never addressed the matter in issue. Additionally, there is a divergence of opinion on the issue among the circuit courts. *Compare United States v. Boyd*, 86 F.3d 719, 721 (7th Cir. 1996) (finding that petitioner was not entitled to a new trial even though his counsel exercised his peremptory challenges in a discriminatory manner), *with United States v. Huey*, 76 F.3d 638, 641 (5th Cir. 1996) (reversing defendant's conviction based on his counsel's discriminatory strikes, because "repudiating all results" from a trial tainted by *Batson* error is the only way to regain public confidence in the integrity of the judicial system). Thus, it defies logic to hold that the state court's decision was contrary to, or involved an unreasonable application of, the *non-existence* of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam) (when no Supreme Court decision "squarely addresses" an issue and existing Supreme Court precedent "give[s] no clear answer to the question presented," "it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law'"); *Carey v. Musladin*, 549 U.S. 70, 76 (2006) (holding that the state court's rejection of a habeas claim was not contrary to, or did not involve an unreasonable application of, clearly established federal law, given the absence of a decision on the matter in issue by the Supreme Court).

Second, applying the Seventh Circuit's reasoning in *Boyd* does not get Winston any closer to the relief he seeks. In *Boyd*, Boyd's lawyer exercised a peremptory challenge against the only black member of the venire. 86 F.3d at 721. Boyd did not protest, the prosecutor did not object, and the jury convicted Boyd of three armed robberies. *Id.* Although it became clear at sentencing that Boyd's lawyer acted on racial stereotypes, the court rejected Boyd's *Batson* challenge because "while [Boyd] had a right to the verdict of a jury chosen without regard to race," "his lawyer waived that right on his behalf." *Id.* at 721-22. According to the Seventh Circuit, while the accused may

participate in jury selection, decisions on jury selection are "among the many entrusted to counsel rather than to defendants personally." *Id.* at 723. Therefore, the petitioner could not protest his own lawyer's tactical decision because by virtue of the agency relationship, such decision was also the petitioner's own decision. *See id.* at 721-22. Moreover, "steps the court takes at the defendant's behest are not reversible, because they are not error . . . ." *Id.* at 722. Thus, in determining whether counsel's inappropriate exercise of a peremptory challenge entitled Boyd to a new trial, the court held that "the exercise of a peremptory challenge by the defense, in violation of *Batson* and *McCollum*, does not entitle the defendant to a new trial unless the challenge amounts to ineffective assistance of counsel." *Id.* at 724; *see also Mata v. Johnson*, 99 F.3d 1261, 1270-71 (5th Cir. 1996) (finding an agreement between prosecution and defense counsel to strike all black venire members from a jury violated the Fourteenth Amendment, but determining that a new trial was not warranted because it would not remedy the harm done to the excluded jurors and because it was Mata or his counsel that invited the error), *vacated in part on other grounds by Mata v. Johnson*, 105 F.3d 209 (5th Cir. 1997).

Like Boyd, Winston did not protest, and like in *Boyd*, the prosecutor did not object to defense counsel's use of peremptory challenges. According to Winston, he protested his lawyer's decision upon seeing the all female jury, but he did not alert the judge to his disagreement. After a similar protest occurred in *Boyd*, the court indicated that "such an unsupported assertion 'just is too facile a tactic to be allowed to succeed.'" *Boyd*, 86 F.3d at 723. Thus, counsel's decision to strike males from the jury operated as Winston's decision, which Winston cannot now protest.

The court's inquiry does not end here, however, because Winston's *Batson* claim is couched in a *Strickland* challenge. Under the Seventh Circuit's precedent, Winston would be entitled to a new trial only if counsel's exercise of peremptory challenges amounts to ineffective assistance of counsel.

*See id.* at 724.  The Seventh Circuit, in *Boyd*, indicated that a petitioner must show that he suffered prejudice under the second prong of *Strickland*.  *See id.* at 722.  Winston has not demonstrated that he suffered prejudice as a result of his counsel's use of peremptory challenges.  Nor has Winston pointed to any Supreme Court decision that stands for the proposition that prejudice is presumed when a defendant's lawyer violates *Batson* by discriminating against potential jurors on the basis of their gender.  Therefore, the court of appeals' decision is not contrary to clearly established federal law.

To hold otherwise, a petitioner who forfeits a *Batson* challenge would be entitled to a belated *Batson* hearing and possibly a new trial merely by bringing a *Batson* claim under the guise of a *Strickland* challenge.  Indeed, such result cannot be tolerated.  "Giving a defendant a new trial because of his own violation of the Constitution would make a laughingsock of the judicial process." *Id.* at 725.

Because the court of appeals' decision was not contrary to, or did not involve an unreasonable application of, clearly established federal law, Winston's petition for habeas relief on the grounds that his counsel was ineffective for failing to ensure men were on the jury will be denied.

## C.  Sufficiency of Evidence

Winston alleges that the evidence introduced at his trial was insufficient to find him guilty beyond a reasonable doubt.  More specifically, he claims that in his situation, the Wisconsin Crime Laboratory sexual assault evidence collection kit instructions indicate that a "blood sample must be collected in all cases not just from [the alleged perpetrator] but [also] from the victim," and no such sample was taken from the victim in his case.  He also claims that the evidence was insufficient to support a guilty verdict because the nurse could not determine from examining the victim's medical records "what part of the breast area the swab came from," and that discrepancies existed with respect

to when a pubic hair analysis was conducted, i.e., whether it was conducted during the first or second round of lab testing.  (Pet. Br. 6.)

The Wisconsin Court of Appeals treated Winston's insufficiency of evidence claim as an ineffective assistance of counsel claim after examining the substance of his challenge.  More precisely, the court of appeals perceived Winston's claims as challenging counsel's effectiveness for failing to impeach certain witnesses.  *State v. Winston*, No. 2005AP1255, 2007 WL 586394, at ¶ 5, n.1 (Wis. Ct. App. Feb. 27, 2007) (unpublished).

I conclude that the court of appeals correctly treated Winston's above claims as ineffective assistance of counsel claims, and therefore, the last state court to address the merits correctly identified *Strickland* as the governing law.  That the crime lab did not collect blood from the victim was a matter for impeachment.  That the nurse could not identify from where on the victim's breast the swabs were taken is also a matter for impeachment.  Bottom line, Winston's DNA was found on the victim in the breast area, and whether Winston's DNA was found on the victim because of the events described by the victim, or because Winston accidentally spit on her while laughing at a joke, was a credibility matter for the jury's determination.

Finally, with respect to the discrepancies regarding the nurse's testimony about when lab testing of pubic hairs was conducted, Winston indicates in his petition that such discrepancy was never put before the trier of fact because his trial counsel did not order transcripts of the first trial. (Pet. Br. 6.)  Such statement belies any insufficiency claim, and instead, illustrates that Winston's true grievance is counsel's failure to obtain transcripts.  As discussed previously, the court of appeals was not persuaded that Winston demonstrated that there was a reasonable probability that, but for counsel's failure to order transcripts, the result of the proceeding would have been different; and neither am I.

Accordingly, Winston has not demonstrated that the state court's decision was contrary to, or involved and unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. Thus, the court will deny his petition for habeas corpus as to this claim.

**D. Amended Information**

Finally, Winston alleges that the amended information violated his right against double jeopardy because it was both duplicitous and multiplicitous, and that amending the information amounted to prosecutorial vindictiveness. (Pet. Br. 2-3.)

The Wisconsin Court of Appeals' holding with respect to Winston's double jeopardy claims was limited. It held that the "amendment charging a different sexual act between these two individuals does not constitute Double Jeopardy." *Winston*, 2007 WL 586394, at ¶ 11. However brief its holding may have been, it was not contrary to clearly established federal law.

"'Duplicity is the joining of two or more offenses in a single count.'" *United States v. Starks*, 472 F.3d 466, 470 (7th Cir. 2006) (quoting *United States v. Hughes*, 310 F.3d 557, 560 (7th Cir. 2002)). Duplicity may expose a defendant to "adverse effects," including double jeopardy. *Id.* at 470-71. Here, the amended information simply does not fit the legal definition of duplicity. Because the amended information charged two offenses in two counts, rather than in one count, it was not duplicitous, and accordingly, it did not violate the Double Jeopardy Clause of the Fifth Amendment. Therefore, Winston is not entitled to habeas relief on this claim because he failed to establish that the court of appeals' decision was contrary to clearly established federal law.

"'Multiplicity is the charging of a single offense in separate counts of an indictment.'" *Id.* at 468-69 (quoting *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995)). "Multiplicity . . . exposes a defendant to the threat of receiving multiple punishments for the same offense in violation

24

of the Double Jeopardy Clause of the Fifth Amendment." *Id.* at 469 (citing *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002)). The test for multiplicity is to determine "'whether each count requires proof of a fact which the other does not. If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity.'" *Id.* (quoting *United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir. 1991)); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not").

Wisconsin defines the crime of second-degree sexual assault of a child as "sexual contact or sexual intercourse with a person who has not attained the age of 16 years . . . ." Wis. Stat. § 948.02(2). Sexual contact is the "intentional touching by the defendant or, upon the defendant's instructions, by another person, by the use of any body part or object, of the complainant's intimate parts" for the purpose of "sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant." Wis. Stat. § 948.01(5)(a)(1). Sexual intercourse means "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction." Wis. Stat. § 948.01(6).

Because sexual assault based on sexual intercourse requires proof of a fact that sexual assault based on sexual contact does not, the counts are not multiplicitous. Here, two violations of the same provision—sexual contact and sexual intercourse—can be charged in multiple counts because the factual overlap between the two counts is not identical. The charges do not arise from events that are one and the same, i.e., the events giving rise to the sexual intercourse charge did not form the basis for the sexual contact charge. In other words, the sexual contact charge was based upon events

independent of the events giving rise to the sexual intercourse charge, and thus, no multiplicity problem arises.

Such conclusion is bolstered by the Seventh Circuit's decision in *United States v. Synder*, 189 F.3d 640 (7th Cir. 1999), where, in a four-count indictment, the government charged the defendant with two counts of violating 18 U.S.C. § 2252(a)(2), which makes it a crime for any person to "knowingly receive[], or distribute[] any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce . . . if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct." *See id.* at 647; *see also* 18 U.S.C. § 2252(a)(2)(A)-(B). Pursuant to § 2252, the defendant was charged with *receiving* child pornography in one count and *distributing* child pornography in another count. The court held that the "Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts." *Id.* Similarly, separate violations of Wis. Stat. § 948.02(2) do not necessarily implicate the Double Jeopardy Clause.

Consequently, Winston has not demonstrated how the court of appeals' decision with respect to his multiplicity claim is contrary to, or involves an unreasonable application of, clearly established federal law. For this reason, his multiplicity claim does not warrant habeas relief.

While addressing Winston's double jeopardy claims, the court of appeals did not address his prosecutorial vindictiveness claim. *Winston*, 2007 WL 586394, at ¶ 11 (addressing only Winston's claim that counsel was ineffective for failing to adequately oppose the State's motion to amend the information). That the state appellate court did not address his claim, however, is not fatal to Winston's habeas petition with respect to the unaddressed claim. According to the United States Supreme Court, "whether the exhaustion requirement . . . has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised

in petitioner's brief in the state court." *Smith v. Digmon*, 434 U.S. 332, 333 (1978). The exhaustion rule "requires only that States be given 'the initial opportunity to pass upon and correct alleged violations of its prisoner's federal rights.'" *Toney v. Franzen*, 687 F.2d 1016, 1021 (7th Cir. 1982) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)); *see also See Wilkinson v. Cowan*, 231 F.3d 347, 352 (7th Cir. 2000). Accordingly, the exhaustion requirement is satisfied "once [a] claim has been fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

Winston fairly presented his claim to the state court if "he [] clearly informed the state court of the factual basis of that claim and [] argued to the state court that those facts constituted a violation of the petitioner's federal constitutional rights." *See id.* (citing *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *Moore v. Duckworth*, 581 F.2d 639, 642-45 (7th Cir. 1978)). Keeping in mind the concerns of federal-state comity, I find that Winston satisfied the exhaustion requirement of 28 U.S.C. § 2254(b) because he fairly presented his prosecutorial vindictiveness claim to the state court. (*See* Exs. H, L.) Because the state court had a fair opportunity to consider these issues, this court will proceed to the merits of his claim. *See Wilkinson*, 231 F.3d at 352 (remanding the case to the district court with instructions to consider the merits of the petitioner's claim, which was not discussed by the state court). Moreover, because Winston's claim was not adjudicated on the merits by the state court, the standard of review set forth in 28 U.S.C. § 2243 will apply instead of the standard set forth in 28 U.S.C. § 2254(d). *See Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000). The standard in § 2243 requires the court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Now, on to the merits of Winston's remaining claim. Whether a prosecutor's decision to bring additional charges constitutes prosecutorial vindictiveness requires the court to first determine "whether a realistic likelihood of vindictiveness exists; if indeed it does exist, then a rebuttable presumption of prosecutorial vindictiveness applies. If [the court] concludes that no presumption of

vindictiveness applies, [the court] must determine whether the [petitioner] has established actual prosecutorial vindictiveness." *State v. Johnson*, 2000 WI 12, ¶ 17, 232 Wis. 2d 679, ¶ 17, 605 N.W.2d 846, ¶ 17. To establish actual vindictiveness, "'there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights.'" *Id.* at ¶ 47, 232 Wis. 2d 679, ¶ 47, 605 N.W.2d 846, ¶ 47 (quoting *United States v. Whaley*, 830 F.2d 1469, 1479 (7th Cir. 1987)).

A review of the record does not demonstrate the existence of a realistic likelihood of vindictiveness. First, the Seventh Circuit and the Wisconsin Supreme Court have both held that the presumption of vindictiveness does not arise after a mistrial caused by a hung jury. *See Whaley*, 830 F.2d at 1479-80; *Johnson*, 2000 WI 12, ¶ 38, 232 Wis. 2d 679, ¶ 38, 605 N.W.2d 846, ¶ 38. More specifically, no presumption of vindictivness arises because "after a mistrial there is no realistic likelihood that the state is retaliating against the defendant's protected right to appeal." *Johnson*, 2000 WI 12, ¶ 38, 232 Wis. 2d 679, ¶ 38, 605 N.W.2d 846, ¶ 38. In *Johnson*, the defendant "did not bring about the need for a retrial by exercising a protected right. The retrial was necessary because the jury's inability to reach a verdict, not because of the exercise of any right by the defendant." *Id.* Such are the precise circumstances here—the retrial was necessary because the jury was unable to reach a verdict, not because Winston exercised any protected right. Accordingly, Winston has not demonstrated a realistic likelihood of vindictiveness.

Nor has Winston established actual vindictiveness. Winston flat out failed to point to any objective evidence that the prosecutor acted to punish him for standing on his legal rights. The crux of Winston's argument is that the amended charge posed a new element and that there was not sufficient notice before his next jury trial. (Pet. Br. 2.) Winston's claim, however, is deflated by the Wisconsin Supreme Court's conclusion that "the prosecutor's belief that sufficient evidence exists

to support a conviction of a new charge provides justification for the decision to file additional charges." *See Johnson*, 2000 WI 12, ¶ 50, 232 Wis. 2d 679, ¶ 50, 605 N.W.2d 846, ¶ 50 (citing *Crozier v. Wyoming*, 882 P.2d 1230, 1233 (1994)). Here, the prosecutor stated that he amended the information upon knowledge that the victim would testify that Winston had sexual intercourse with her. (Ex. O at 7:8-14, 10:9-15.) That the new charge puts the prosecution to proof on another element does not rise to the level of punishment necessary to trigger a vindictiveness charge. Moreover, contrary to Winston's assertions that he was insufficiently notified of the amended charges, the trial record reflects a discussion indicating that Winston had approximately a six-month notice of the prosecution's intent to file an amended information, and that his new trial counsel would have also been sufficiently notified of the same, as he became involved in the case in May of 2002. (Ex. O at 5-7.) Thus, the evidence is not legally sufficient to support a finding of vindictiveness.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Winston has not demonstrated that he is entitled to federal habeas corpus relief on any of the asserted grounds. Therefore, Winston's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that Winston's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 19th day of November, 2009, at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge